A-533-840<br>
Remand: Slip Op. 21-11<br>
Court No. 19-00201<br>
AR: 02/01/2017 – 01/31/2018<br>
**Public Document**<br>
E&C/OII: DC

**FINAL RESULTS OF REDETERMINATION ON REMAND PURSUANT TO
CALCUTTA SEAFOODS PVT. LTD., BAY SEAFOOD PVT. LTD., AND ELQUE & CO.
V. UNITED STATES**
Court No. 19-00201, Slip Op. 21-11 (CIT February 3, 2021)

### I.     SUMMARY

The Department of Commerce (Commerce) prepared these final results of redetermination on remand pursuant to the opinion and remand order from the U.S. Court of International Trade (the Court or CIT) in *Calcutta Seafoods Pvt. Ltd., Bay Seafood Pvt. Ltd., and Elque & Co. v. United States*, Court No. 19-00201, Slip Op. 21-11 (CIT February 3, 2021) (*Remand Order*). This remand concerns the final results of the 2017-2018 antidumping duty (AD) administrative review on certain frozen warmwater shrimp (shrimp) from India.[1]

In its *Remand Order*, the Court held that Commerce unlawfully applied adverse facts available (AFA) to one of the mandatory respondents, the Elque Group,[2] and that Commerce failed to provide adequate assistance to the Elque Group as a small, first-time mandatory respondent.[3] The Court remanded the *Final Results* to Commerce to reconsider its determination to treat the Elque Group as an uncooperative respondent.[4] As set forth below, in these final results, Commerce has applied neutral facts available to the Elque Group's reported data to calculate a weighted-average dumping margin. As a result, the estimated weighted-average

---

[1] *Certain Frozen Warmwater Shrimp from India: Final Results of Antidumping Duty Administrative Review; 2017–2018*, 84 FR 57847 (October 29, 2019) (*Final Results*), and accompanying Issues and Decision Memorandum.
[2] The Elque Group consists of Calcutta Seafoods Pvt. Ltd., Bay Seafood Pvt. Ltd., and Elque & Co.
[3] *See Remand Order* at 26.
[4] *See Remand Order* at 26-27.

dumping margin for the Elque Group becomes 27.66 percent and based on that change, the rate for non-examined companies subject to the review becomes 6.13 percent.

## II. BACKGROUND

On October 29, 2019, Commerce published the final results of the AD administrative review on shrimp from India, covering the period February 1, 2017, to January 31, 2018.[5] There were two participating respondents in the administrative review: the Elque Group and Magnum Estates Limited.

Commerce determined that the Elque Group failed to respond adequately to certain questions contained in the original and supplemental questionnaires issued by Commerce. Specifically, Commerce stated the following:

> As a result of the Elque Group's deficient responses to our requests for explanations and clarifications, we are unable to assess the reasonableness and reliability of the submitted cost data which is necessary to calculate an AD margin.
>
> The Elque Group failed to provide Commerce with information which would serve as a reliable basis for calculating an AD margin, despite having had multiple opportunities to do so.[6]

Because the Elque Group: (1) withheld requested information; (2) failed to provide information in the form or manner requested by Commerce; and (3) significantly impeded this proceeding, we determined that the use of facts otherwise available was warranted in determining a dumping margin for the Elque Group, pursuant to sections 776(a)(1) and (a)(2)(A)-(C) of the Tariff Act of 1930, as amended (the Act).[7]  Moreover, the Statement of Administrative Action (SAA) provides that Commerce may employ an adverse inference "to ensure that the party does not obtain a

---

[5] *See Final Results*, 84 FR at 57847.
[6] *See Certain Frozen Warmwater Shrimp from India: Preliminary Results of Antidumping Duty Administrative Review; 2017-2018*, 84 FR 16843 (April 23, 2019) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum (PDM) at 11, unchanged in the *Final Results*.
[7] *Id*.

2

more favorable result by failing to cooperate than if it had cooperated fully."[8]  Although we provided multiple opportunities for the Elque Group to provide the requested information,[9] it failed to provide the information necessary for Commerce to calculate an AD margin in the administrative review.  As a result, we determined that the Elque Group failed to cooperate to the best of its ability by failing to provide the necessary information for Commerce to conduct an administrative review.[10]  For these reasons, we found that the application of facts available with an adverse inference, pursuant to section 776(b) the Act, was warranted.

The Elque Group challenged Commerce's application of AFA, arguing that Commerce: (1) did not provide adequate assistance, as required by the Act for small companies; and (2) improperly applied an AFA rate that was neither supported by substantial evidence nor in accordance with law.[11]  The Court held that, because the Elque Group provided notice that, as a small company, it had difficulties responding to Commerce's questions, Commerce was statutorily obligated to provide further assistance to the Elque Group, pursuant to section 782(c)(2) of the Act.[12]  The Court also held that Commerce failed to provide that assistance to the Elque Group and, therefore, Commerce's application of AFA was unlawful.[13]

### III.  ANALYSIS

Commerce respectfully disagrees with the Court and believes that the Elque Group did not warrant additional assistance from Commerce because the Elque Group failed to provide "suggested alternate forms" in which it could submit the requested information, as required by

---

[8] *See* SAA, H.R. Doc. No. 316, 103d Cong., 2d Sess. (1994) at 870; *see also Certain Polyester Staple Fiber from Korea:  Final Results of the 2005-2006 Antidumping Duty Administrative Review*, 72 FR 69663 (December 10, 2007).
[9] *See Preliminary Results* PDM at 13.
[10] *Id.*
[11] *See Remand Order* at 9-10.
[12] *Id.* at 14-15, 27.
[13] *Id.* at 20-27.

3

section 782(c)(1) of the Act. The Court found that the Elque Group was a cooperative party because the Elque Group satisfied its burden to notify Commerce of its difficulties under section 782(c)(1) of the Act and complied to the extent possible with Commerce's requests for information. However, we believe that the requirement under section 782(c)(1) of the Act that a respondent present Commerce with "suggested alternate forms" requires a higher degree of effort from a respondent than solely notifying Commerce of its difficulties. At no point did the Elque Group offer any "alternate forms" of meeting Commerce's reporting requirements by which it could submit the requested information.

Additionally, in future proceedings where the issue arises, Commerce expects to examine the basis for a party's claim to be a small company. Although in this case Commerce treated the Elque Group as a small company during the administrative review without any examination of the support for this claim, Commerce expects, in future proceedings, to analyze the factual information on the record to determine whether a company claiming assistance is, in fact, a small company within the meaning of section 782(c)(2) of the Act.

Notwithstanding this, considering the Court's remand to Commerce to reconsider its determination to treat the Elque Group as a noncooperative respondent, the Court afforded Commerce the option either to reopen the record to procure additional information or consider applying neutral facts available. Upon further review of the Elque Group's reported cost of production data, we continue to find that we cannot rely on the Elque Group's submitted costs, as reported, because the Elque Group's reported costs for raw shrimp do not reasonably account for differences in the count sizes of shrimp it purchased; its cost database includes multiple costs for the same products, as defined by product control numbers (CONNUMs); and its reported general

and administrative (G&A) expense ratio does not appear to include all relevant costs.[14] However, pursuant to the Court's ruling and in light of the circumstances of this case, we have determined that, while the data are insufficient and unreliable, the cost data on the record provide some basis to calculate a dumping margin for the Elque Group as facts otherwise available. Accordingly, we used record information to apply neutral facts available to remedy the Elque Group's further need for assistance in this review and recalculate its weighted-average dumping margin.

To address the Elque Group's unreliable reported raw shrimp and inconsistent CONNUM costs, we reallocated the Elque Group's costs using sales data. Specifically, for each company in the Elque Group, we calculated the average prices of the merchandise under consideration on both a count size – and species-basis. We then used these relative average sales values to reallocate the total cost of the input raw shrimp incurred by each company based on the count size grouping within each species. Under this methodology, we reapportioned the input raw shrimp costs in order to reflect reasonably the corresponding count size and species.

To address the Elque Group's inadequate calculation of its G&A expense ratio, we recalculated this figure using the information contained in the reported trial balance for the fiscal year ending March 31, 2018.[15] For a complete description of the cost and sales adjustments performed, *see* the Elque Group Cost Memorandum.[16]

---

[14] *See Preliminary Results* PDM at 7-15; *see also* Memorandum, "Cost of Production and Constructed Value Adjustment for Court Remand – Elque Group," dated concurrently with this remand redetermination (Elque Group Cost Memorandum).

[15] *See* Elque Group's Letter, "Submission of Supplemental Questionnaire Response Against Your Letter Dated March 5, 2019 for Elque Group for Administrative Review of the Antidumping Duty on Frozen Warmwater Shrimp from India," dated March 20, 2019 at Exhibits SUPPLE D-25 – D-27.

[16] *See also* Memoranda, "Cost of Production and Constructed Value Adjustment for Court Remand – Elque Group," and "Remand Redetermination Sales Calculation for the Elque Group," both dated concurrently with this remand redetermination.

## IV. INTERESTED PARTY COMMENTS

On April 21, 2021, Commerce released the draft results of redetermination to all interested parties and invited parties to comment.[17] On April 26, 2021, we received comments from the Ad Hoc Shrimp Trade Action Committee (the petitioner) and the Elque Group.[18] We address the parties' comments below.

*Petitioner's Comments*

- Commerce's Draft Remand Results complied with the CIT's *Remand Order* and opinion.[19]

- Using the Elque Group's own data as neutral facts available is consistent with the statute, as necessary information requested by Commerce is missing from the record.[20]

- The Elque Group's claim that it is a small company is not supported by the record. In fact, the company sold shrimp to the United States, Vietnam, and Canada valued at millions of U.S. dollars and is currently represented by two sets of legal counsel.[21] Going forward, Commerce's intent to examine closely "the factual record to determine whether a company claiming assistance is, in fact, a small company" is important to ensuring that section 782(c)(2) of the Act is not abused by respondents in future proceedings.[22]

---

[17] *See* "Draft Results of Redetermination on Remand Pursuant to Calcutta Seafoods Pvt. Ltd., Bay Seafood Pvt. Ltd., and Elque & Co. v. United States, Slip Op. 21-11, Court No. 19-00201 (CIT February 3, 2021)," issued on April 21, 2021 (Draft Remand Results).
[18] *See* Petitioner's Letter, "Certain Frozen Warmwater Shrimp from India: Domestic Producers' Comments on Draft Results of Redetermination on Remand," dated April 26, 2021 (Petitioner's Comments); and The Elque Group's Letter, "Certain Frozen Warmwater Shrimp from India: Elque Group's Comments on the Draft Results of Redetermination on Remand," dated April 26, 2021 (Elque Group's Comments).
[19] *See* Petitioner's Comments at 2.
[20] *Id*. at 2-3.
[21] *Id*. at 3-4. Petitioner notes that the Elque Group engaged counsel only after the closing of the administrative record, a potential strategic tactic to preserve its status as a "small company" during the active administrative record.
[22] *Id*.

*The Elque Group's Comments*

- Commerce made available the Draft Remand Results to all interested parties on April 22, 2021, yet only provided until April 26, 2021 (including an intervening weekend) for parties to comment.[23] In the limited time for comment, which consisted of more than 400 pages of disclosure materials, the Elque Group, was unable to review the draft results of redetermination in sufficient detail to determine whether they contain clerical or methodological errors.[24]
- Pursuant to the schedule established in the *Remand Order*, the Elque Group reserves its right to submit further comments to the Court, whether in support of, or opposition to, the final remand results.[25]

*Commerce's Position*

With respect to the petitioner's comments, as noted above, we disagree with the Court's holding that the Elque Group adequately satisfied its burden to notify Commerce of its difficulties under section 782(c)(1) of the Act. With respect to the Elque Group's comment concerning the limited length of time for filing comments, we note that the Elque Group did not request an extension of time by which to consider Commerce's draft remand results. Had the Elque Group requested an extension, Commerce would have considered the request, including the possibility of having the government request additional time from the Court for Commerce to file its final redetermination on remand. Accordingly, consistent with the Court's *Remand Order*, and under respectful protest, we continue to recalculate the Elque Group's margin, as

---

[23] *See* Elque Group's Comments at 2.
[24] *Id.*
[25] *Id.*

well as the rate for non-examined companies subject to the review, for these final results of redetermination.

## V.    FINAL REMAND RESULTS

Per the instructions of the Court, under respectful protest, we have recalculated the weighted-average dumping margin for the Elque Group based on neutral facts available.  As a result, the estimated weighted-average dumping margin for the Elque Group becomes 27.66 percent.  Furthermore, we revised the rate for non-examined companies based on the recalculated rate for the Elque Group.  The revised rate for non-examined companies subject to the review is 6.13 percent.[26]

5/3/2021

X _____

Signed by: CHRISTIAN MARSH

Christian Marsh
Acting Assistant Secretary
  for Enforcement and Compliance

---

[26] *See* Memorandum, "Remand Redetermination of the Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp from India:  Remand Redetermination Calculation of the Review-Specific All-Others Rate," dated May 4, 2021.