Slip Op. 21-123

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CALCUTTA SEAFOODS PVT. LTD., BAY SEAFOOD PVT. LTD., AND ELQUE & CO., <br><br>   Plaintiffs, <br><br>  v. <br><br>UNITED STATES, <br><br>   Defendant, <br><br>  and <br><br>AD HOC SHRIMP TRADE ACTION COMMITTEE, <br><br>   Defendant-Intervenor. | Before: Gary S. Katzmann, Judge <br> Court No. 19-00201 |

## OPINION

[The court sustains Commerce's Final Results of Redetermination.]

Dated: September 20, 2021

Neil R. Ellis, Sidley Austin LLP, of Washington, D.C., for Plaintiffs Calcutta Seafoods Pvt. Ltd, Bay Seafood Pvt. Ltd., and Elque & Co. With him on the brief were Rajib Pal and Alexandra S. Mauever.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With her on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of Counsel Spencer Neff, Attorney, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce. With them on the post argument submission was Jeffrey Bossert Clark, Acting Assistant Attorney General.

Nathaniel Maandig Rickard and Zachary J. Walker, Picard Kentz & Rowe LLP, of Washington, D.C., for Defendant-Intervenor Ad Hoc Shrimp Trade Action Committee.

  Katzmann, Judge: The court returns to litigation involving the application of a statute that enables small companies to receive additional assistance in antidumping duty ("AD") reviews or investigations. Calcutta Seafoods Pvt. Ltd. v. United States, 45 CIT __, __, 495 F. Supp. 3d 1318 (2021) ("Calcutta I"). Plaintiffs Calcutta Seafoods Pvt. Ltd., Bay Seafood Pvt. Ltd., and Elque &

Co. (collectively, the "Elque Group" or "Plaintiffs") brought this action to contest the final results of the Department of Commerce's ("Commerce") administrative review of the AD order on Certain Frozen Warmwater Shrimp from India for the period of review ("POR") of February 1, 2017 to January 31, 2018. <u>Certain Frozen Warmwater Shrimp from India: Final Results of Antidumping Duty Administrative Review; 2017–2018</u>, 84 Fed. Reg. 57,847 (Dep't Commerce Oct. 29, 2019) ("<u>Final Results</u>"). Plaintiffs challenged Commerce's <u>Final Results</u> on the basis that Commerce unlawfully applied adverse facts available ("AFA") to the Elque Group for failing, in Commerce's estimation, to cooperate to the best of its ability in responding to Commerce's questionnaires. Compl., Nov. 20, 2019, ECF No. 4. The court determined that Commerce's application of AFA was unlawful and remanded the <u>Final Results</u> for reconsideration. <u>Calcutta I</u>, 495 F. Supp. 3d at 1335–36. The court now sustains Commerce's Final Results of Redetermination Pursuant to Court Remand, May 4, 2021, ECF No. 49-1 ("<u>Remand Results</u>").

## BACKGROUND

The court set out the relevant legal and factual background of the proceedings in further detail in its previous opinion, <u>Calcutta Seafoods Private Ltd. v. United States</u>, 45 CIT __, __, 495 F. Supp. 3d 1318 (2021). Information relevant to the instant opinion is set forth below.

On April 16, 2018, Commerce published a notice of initiation regarding its administrative review of the AD duty order covering warmwater shrimp from India. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 83 Fed. Reg. 16,298, 16,300–04 (Dep't Commerce Apr. 16, 2018). Commerce ultimately selected Calcutta Seafoods Pvt. Ltd. as a mandatory respondent,[1] and after initial submissions collapsed Calcutta Seafoods Pvt. Ltd., Bay

---

[1] In AD investigations or administrative reviews, Commerce may select mandatory respondents pursuant to 19 U.S.C. § 1677f-1(c)(2), which provides:

Seafood Pvt. Ltd., and Elque & Co. into the Elque Group for purposes of the administrative review. See Mem. from B. Bauer to M. Skinner, re: Selection of New Respondents for Individual Review (Aug. 7, 2018), P.R. 57; Mem. from B. Bauer to M. Skinner, re: Whether to Collapse Bay Seafood Pvt. Ltd., Calcutta Seafoods Pvt. Ltd., and Elque & Co. in the 2017–2018 Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp from India (Oct. 19, 2018), P.R. 108. In the course of the review, the Elque Group responded to Commerce's Section D Questionnaire and then replied to two supplemental questionnaires regarding Section D from Commerce. Section D Questionnaire; Letter from Elque Group to Commerce, re: Elque Group Resp. to Section D Questionnaire (Nov. 13, 2018), P.R. 117; Letter from Commerce to Elque Group, re: Administrative Review of the Antidumping Duty Order on Certain Frozen Warmwater Shrimp from India (Suppl. Section D Questionnaire) (Dec. 17, 2018), P.R. 122; Resp. from Elque Group to Commerce, re: Submission of Suppl. Questionnaire Resp. Against Your Letter Dated Dec. 17, 2018 for Elque Group for Administrative Review of the Antidumping Duty on Frozen Warmwater Shrimp from India (Dec. 24, 2018), P.R. 138; Letter from Commerce to Elque Group, re: Administrative Review of the Antidumping Duty Order on Certain Frozen Warmwater Shrimp from India (Second Suppl. Section D Questionnaire) (Mar. 5, 2019), P.R. 142; Resp. from Elque

---

If it is not practicable to make individual weighted average dumping margin determinations under paragraph (1) because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to—

    (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or

    (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

Group to Commerce, re: Submission of Suppl. Questionnaire Resp. Against Your Letter Dated Mar. 5, 2019 for Elque Group for Administrative Review of the Antidumping Duty on Frozen Warmwater Shrimp from India (Mar. 20, 2019), P.R. 150. Commerce also granted the Elque Group various extensions throughout the review. See, e.g., Letter from Commerce to the Elque Group, re: 2017–2018 Administrative Review of Certain Frozen Warmwater Shrimp from India: Grants Partial Extension for Section D Resp. (Nov. 6, 2018), P.R. 114; Letter from Commerce to the Elque Group, re: 2017–2018 Administrative Review of Certain Frozen Warmwater Shrimp from India: Grants Partial Extension for Second Section D Response (Mar. 11, 2019), P.R. 144.

In its preliminary results, Commerce determined that the Elque Group had been a non-cooperative respondent and that it failed, despite multiple opportunities, to provide the necessary product-specific conversion costs and complete cost reconciliations for Commerce's calculation of a final AD duty margin. Mem. from J. Maeder to G. Taverman, re: Decision Mem. for the Preliminary Results of the 2017–2018 Administrative Review of the Antidumping Duty Order on Certain Frozen Warmwater Shrimp from India at 7–15 (Apr. 9, 2019), P.R. 59 ("PDM"). Commerce also preliminarily relied on AFA in its calculation of a 110.90% AD margin. Certain Frozen Warmwater Shrimp From India: Preliminary Results of Antidumping Duty Administrative Review; 2017–2018, 84 Fed. Reg. 16,843, 16,844 (Dep't Commerce Apr. 23, 2019) ("Preliminary Results"). Ultimately, Commerce maintained its application of AFA and the resultant 110.90% AD margin in its Final Results and stated that it had adequately considered the Elque Group's small business status by providing extensions and supplemental questionnaires in the course of the review. Mem. From J. Maeder to J. Kessler re: Issues and Decision Mem. for the Final Results of the 2017–2018 Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp from India 11–19 (Dep't Commerce Oct. 21, 2019), P.R. 188 ("IDM").

This action was initiated on November 20, 2019 by the Elque Group and a complaint was timely filed. Summons, ECF No. 1; Compl. Plaintiffs alleged in their complaint that Commerce's application of a 110.90% weighted-average AD margin to the Elque Group was unsupported by substantial evidence and not in accordance with law because (1) Commerce applied AFA without identifying deficiencies in the Elque Group's questionnaire responses and providing an opportunity to remedy those deficiencies; (2) the Elque Group cooperated to the best of its ability throughout the administrative review; (3) the 110.90% AFA rate was unduly punitive and not representative of the facts and circumstances of the review; and (4) Commerce failed to take into account the Elque Group's small company status in the course of the review. Compl. at 5–8. In light of these allegations, Plaintiffs requested that the court remand the Final Results to Commerce with instructions to "take into account the difficulties experienced by the Elque Group as a small company" and to recalculate the applicable AD margin. Id. at 9.

On November 22, 2019, the Ad Hoc Shrimp Trade Action Committee ("AHSTAC") joined the litigation as Defendant-Intervenor. Order Granting Consent Mot. to Intervene, ECF No. 13. On February 26, 2020, the Elque Group filed a Rule 56.2 Motion for Judgment on the Agency Record, ECF No. 20. The United States ("Government") and AHSTAC each submitted a response to the Elque Group's motion on May 1, 2020. Def.-Inter.'s Resp. to Pls.' Mot. for J. on the Agency R., ECF No. 23; Def.'s Resp. to Pls.' Mot. for J. on the Agency R., ECF No. 25. Oral argument on the motion was held on November 16, 2020. Oral Argument, ECF No. 42. The court issued its ruling on February 3, 2021, concluding that Commerce failed to satisfy its statutory duty to provide further assistance to the Elque Group as a small company under 19 U.S.C. § 1677m(c)(2) and thus Commerce's application of AFA was unlawful. Calcutta I, 495 F. Supp. 3d at 1333–36. The court remanded Commerce's Final Results for further action consistent with the court's

opinion. Id. at 1336. On remand, and under respectful protest, Commerce recalculated the weighted-average AD margin for the Elque Group using neutral facts available by analyzing existing sales data to reapportion the product-specific input costs and recalculating the general and administrative expenses. Remand Results at 5. Commerce ultimately assigned a revised AD rate of 27.66%. Remand Results at 8. On June 3, 2021, AHSTAC submitted comments requesting the court sustain the Remand Results, Def.-Inter.'s Cmts. on Remand Redeterm., ECF No. 51, and on June 17, 2021 the Government submitted reply comments further requesting the Remand Results be sustained, Def.'s Resp. to Cmts. on Remand Redeterm., ECF No. 52. Plaintiffs filed no additional comments before the court.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c). The standard of review in this action is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i): "[t]he court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." The court also reviews the determinations pursuant to remand "for compliance with the court's remand order." See Beijing Tianhai Indus. Co. v. United States, 39 CIT __, __, 106 F. Supp. 3d 1342, 1346 (2015) (citations omitted).

## DISCUSSION

In Calcutta I, the court held that the Elque Group adequately notified Commerce of its need for assistance, and that Commerce's failure to provide sufficient assistance rendered its application of AFA unlawful. The court noted that "the Elque Group made multiple attempts to notify Commerce of its difficulties throughout the review," including by directly informing Commerce that it was a small company respondent without previous experience with investigations and

reviews, and providing abundant, albeit inadequate, responses to Commerce's questionnaires. Calcutta I, 495 F. Supp. 3d at 1329–30. Given these attempts to communicate its difficulties to Commerce and to cooperate with the review, the court concluded that "it is clear that Commerce had sufficient notice that the Elque Group was having trouble providing the requested information and . . . needed additional help." Id. at 1330. Because Commerce failed to "take into account any difficulties" experienced by the Elque Group during the review, as required by 19 U.S.C. § 1677m(c)(2), the court further concluded that Commerce did not provide adequate assistance to the Elque Group as a small company respondent. Id. (citing 19 U.S.C. § 1677m(c)(2)). Finally, because the application of AFA requires a determination, "[a]t a minimum, that a respondent could comply, or would have had the capability of complying if it knowingly did not place itself in a condition where it could not comply," the court concluded that the facts did not support application of AFA in this instance. Nippon Steel Corp. v. United States, 24 CIT 1158, 1171, 118 F. Supp. 2d 1366, 1378–79 (2000); Calcutta I, 495 F. Supp. 3d at 1334. The court remanded to Commerce with instructions to reconsider its decision to apply AFA, whether by reopening the record to provide further assistance to the Elque Group or by applying neutral facts available, and revising its Final Determination accordingly. Calcutta I, 495 F. Supp. 3d at 1335–36.

On remand, Commerce applied neutral facts available. Commerce stated that "while we continue to find that we cannot rely on the Elque Group's submitted costs," the record nevertheless "provide[s] some basis to calculate a dumping margin for the Elque Group as facts otherwise available." Remand Results at 4–5. Accordingly, Commerce reallocated the Elque Group's input costs using previously submitted sales data and recalculated its general and administrative expense ratio "using the information contained in the reported trial balance for the fiscal year ending March 31, 2018." Id. at 5; see generally, Mem. From S. Medillo to N. Halper re Cost of Production and

Constructed Value Calculation Adjustments for the Court Remand (Dep't Commerce Apr. 21, 2021), R.P.R. 6 ("Cost Memo"). Commerce then recalculated the weighted average AD margin for the Elque Group to 27.66% and for non-examined companies to 6.13%. Remand Results at 8.

The court concludes that Commerce's Remand Results comply with the court's order requesting redetermination and are both supported by substantial evidence and in accordance with law. As requested by the court, Commerce recalculated the Elque Group's AD duty rate without applying AFA. Calcutta I, 495 F. Supp. 3d at 1335–36. The recalculated AD rate reflects the evidence in the record and is sufficiently explained by Commerce. See generally, Cost Memo. The revised rate also adequately accounts for the Elque Group's small company status under 19 U.S.C. § 1677m(c)(2) and does not penalize the Elque Group for failing to provide information it did not possess. See Calcutta I, 495 F. Supp. 3d at 1335 (citing Tung Fong Indus. Co., 28 CIT 459, 476–77, 318 F. Supp. 3d 1321, 1335–36 (2004)). The Remand Results thus comply with Commerce's legal obligations, as ordered by the court in Calcutta I, and are supported by substantial evidence in the record.

## CONCLUSION

For the foregoing reasons, Commerce's Remand Results are sustained. Judgment will enter accordingly in favor of the Defendant.

**SO ORDERED**.

/s/ Gary S. Katzmann
Gary S. Katzmann, Judge

Dated: September 20, 2021
      New York, New York